Welch, C. J.
As a majority of the court incline to understand the records of these surveys, the defendants, by giving them in evidence, disprove their defense, by showing that the place of the alleged trespass is north of the north boundary line of the original road. The original survey ran and marked but a single line — the north boundary line — and placed all its monuments and marks upon that line. The resurvey of November, 1861, in like manner runs and traces but a single line, and on its face seems fo adopt as monuments or marks upon that line some, or at least one, of the monuments of the old survey. To say the least, as it seems to a majority of us, the question whether the line surveyed and established in 1861 is identical with the original line run in 1811 is a mere question of construction, to be determined by an inspection of the records, and not by a committee of reviewers. If that be so, then there is nothing in this review of 1867 but a declaration of the reviewers, by which they attempt to put a construction upon the record of the surveys made in 1861. They substantially retrace the line ran and established in 1861, calling it the “center line” of the road, and declaring that they ran and marked it as such. The object of the statute authorizing the review is to find the old road, and not to lay out or establish a new road, either in whole or in part. And if, as a majority of the court iucline to hold, the line described in the survey of November, 1861, is identical with the original north line of the road, it was not in the power of the reviewers of 1867 to extend the road north of that line, and the survey of 1867 would go for naught. The viewers had no authority either to put a construction upon the record of the previous surveys, or to remove the road thirty feet to the north, and thus locate it upon private property.
*188 But suppose this construction of the records to be 'wrong, and that these resurveys are to be understood as ■laying down this center line as and for the center line of the old road, and not as identical with its original north line. How stands the case then? Is the plaintiff, an adjoining proprietor of land, and no party to the proceeding, concluded by the resurveys? Can his private property be thus taken against his will, and without compensation? We think not, and that the court erred in rejecting testimony ■offered by him tending to impeach the resurveys, and in instructing the jury, as we understand the court to have done, that these resurveys were conclusive evidence of the lines and location of the legal road. True, the court did not say in terms that the resurveys were conclusive, and yet the instruction given, to the effect that the records were conclusive, and could not be impeached, in connection with the fact that the court had already excluded all testimony tending to impeach the survey's, must have been understood by the jury in that sense. In a proper sense, it is true that the records can not be impeached. They are conclusive ■evidence of the fact that the surveys were made, but not of their correctness and legality.
The provision of the statute in question, authorizing the viewers to “ straighten ” the road, can not be understood as authorizing the condemnation and appropriation of new lands to the public use, without notice or compensation to the owner. Nor can the declaration of the statute, that ■the road,'as so resurveyed, shall thenceforth “ be considered a public highway,” have that effect. To give the statute such an interpretation would be to make it unconstitutional. These provisions must be understood with the qualification that private property is not to be invaded by the resurvey or re-establishment of the road. If the road is straightened, it must be straightened in a form not to interfere with private property ; and as between the owners of such property and the public, the resurvey is only prima facie evidence of the lines and boundaries of the original ■road, subject to be impeached by evideuee, clearly showing *189 that the resurvey includes private property not embraced in* the road.
But it is contended that the supervisor, being a ministerial officer, should be protected by the record of the survey, and the declaration of the law that the road, as resurveyed and established, “ shall be considered a public highway,” and that the plaintiff must seek his remedy otherwise than by an action of trespass against the supervisor» We think otherwise. The case is not analogous <to that of a supervisor who has a warrant to open a new \pr of a. sheriff' who holds a writ of execution. Here, m ’er is given, and there is no superior or controlling party '^r tribunal, to whom the plaintiff’ can look for redress, or by enjoining whom he can effectually prevent the mischief.. To hold that the plaintiff’can not have his action against the supervisor, as he might have it against a traveler, or any other trespasser upon his private lands, would be to-hold him remediless.
We think the court erred in its instruction to the jury,, and in rejecting the plaintiff’s testimony tending to show that the locus in quo was outside the original road; and to-a majority of us, it seems that the fact is sufficiently shown-by the records themselves.
Judgment reversed, and cause remanded for further proceedings.